**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 15-10046-LTS** |
| | ) | |
| **MARTIN LUSTGARTEN ACHERMAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**GOVERNMENT'S OPPOSITION TO MOTION**
**FOR RECONSIDERATION OF PRE-TRIAL DETENTION ORDER**

The United States of America, by and through Assistant United States Attorneys Katherine Ferguson and Linda M. Ricci, hereby requests that the Court deny without an evidentiary hearing the Motion for Reconsideration of the Pre-Trial Detention Order filed by defendant Martin Lustgarten Acherman ("Lustgarten"). First, Lustgarten offers no new facts or information that warrant a re-opening of the detention hearing. As he was advised during his arraignment in Massachusetts, Lustgarten is not automatically entitled to a second evidentiary hearing. Second, although Lustgarten claims in his Motion that there are conditions that could be imposed that would reasonably assure his appearance at trial, that assertion is belied by the record: Lustgarten is a Venezuelan national who, based on the Venezuelan Constitution, cannot be extradited from Venezuela; Lustgarten faces a very significant sentence of incarceration; the charges followed a multi-year, multi-agency investigation that included the monitoring of court-authorized intercepted telephone communications involving Lustgarten; Lustgarten has an extensive foreign travel history; and Lustgarten has extensive financial resources worldwide. These facts, along with several other relevant considerations, such as the fact that the underlying crime involved the laundering of tens of millions of U.S. dollars derived from drug trafficking, as well as Defendant's

-1-

material misstatements to federal investigators, make clear that there is no set of conditions that would reasonably assure his appearance at trial.

## FACTUAL BACKGROUND

*The First Superseding Indictment*

The First Superseding Indictment against Lustgarten was returned on April 1, 2015. Lustgarten is charged with participating in an international money laundering scheme involving the proceeds of drug trafficking in the United States.   (Indictment ¶¶ 10-14.)   More specifically, the Indictment alleges that Lustgarten controlled numerous foreign bank accounts located in Hong Kong, Singapore, Panama, and elsewhere, that he used those accounts to receive millions of U.S. dollars that were the proceeds of drug trafficking in the United States, and that he concealed the nature, source, and ownership of the drug money.   (Indictment ¶¶ 2-5, 10, 12.)   Lustgarten also is charged with obstructing an official proceeding by providing false information to federal investigators from the Drug Enforcement Administration and the Department of Homeland Security, Homeland Security Investigations, about the nature and scope of his involvement with co-defendant Salomon Bendayan.   (Indictment ¶¶ 11, 13 & Counts II and III).   Lustgarten faces a statutory maximum penalty of twenty years, and the government's preliminary calculation of Lustgarten's advisory Sentencing Guidelines Range reflects that his exposure would otherwise be above the statutory maximum with the upper end being a life sentence.   (Detention Transcript at 6.)

*The Detention Hearing*

On April 8, 2015, Lustgarten was arrested in South Florida.   On April 13, 2015, United States Magistrate Judge Edwin Torres conducted an evidentiary detention hearing in the United

States District Court for the Southern District of Florida.   At the outset of the hearing, the Court elicited a factual proffer from the government and then permitted Defendant to cross-examine Special Agent Phillip Lavoie.   (Detention Transcript at 6-9.)   In response to defense counsel's questions, Special Agent Lavoie testified that, based on the investigation, Lustgarten represented that a business owned by him, known as Henlux, was involved in purchase order financing in international trade involving Venezuela; in reality, the government proffered, Lustgarten used Henlux "as a cover to launder money for drug cartels and others."   (Detention Transcript at 8, 13.) Lustgarten "made a business of gathering U.S. dollars and making them available in places where they are hard to come by, such as Venezuela, and the significance of that is the source of those dollars.   Mr. Lustgarten is well aware that at least $40 million and possibly $100 million comes from drug cartels or paramilitary organizations."   (Detention Transcript at 8-9.)   During the investigation, agents monitored court-authorized intercepted telephone calls between Lustgarten and co-defendant Salomon Bendayan.   (Detention Transcript at 15.)   In addition, at one time, Lustgarten was a "source of information" for the government.   DEA Special Agent Brian DeJoy was the primary contact for Lustgarten, and Special Agents DeJoy and Lavoie met in person with Lustgarten.   (Detention Transcript at 17-19.)   During these meetings, Lustgarten provided false information to the government.   (Detention Transcript at 18.)

Moreover, during the detention hearing, the government proffered that Lustgarten has access to millions of dollars as well as a network of contacts all around the world.   (Detention Transcript at 24.)   As acknowledged by his attorney at the detention hearing, the government has taken steps to freeze Lustgarten's accounts.   (Detention Transcript at 25.)

At the close of the hearing, United States Magistrate Judge Torres noted that "this case

involves a substantial amount of money, far more than I have ever seen, number one.   More importantly than that, there are significant foreign ties that the Defendant has . . . . [T]here is a concern that, if he were to flee, he would not be extraditable given the governmental situation in Venezuela."   (Detention Transcript at 27.)   Although Judge Torres observed that it is "possible" that the court in Massachusetts might approve an alternative to detention, ultimately, he found that detention of Lustgarten was warranted.   (Detention Transcript at 28.)

*The Detention Order*

In a written Order issued on April 16, 2013, Judge Torres carefully examined the weight of the evidence and Defendant's history and characteristics and, based on his analysis, ordered that Lustgarten be detained pending trial.

The Magistrate Judge Found that the Weight of the Evidence Against Defendant is Substantial.

In concluding that the weight of the evidence against Defendant is "substantial" (Detention Order at 2.), Judge Torres noted the following facts, among others:

- Defendant was the subject of a multi-year investigation that revealed Defendant's involvement in a "complex web of foreign companies operating under the guise of a 'purchase order financing' company to make otherwise illegal wire transfers." The investigation included court-authorized wiretaps, the execution of e-mail search warrants, and in-person interviews.   (Detention Order at 2.)

- Defendant used bank accounts in at least five countries and is responsible for laundering between $40 million and $100 million for drug cartels and paramilitary organizations in South America.   (Detention Order at 2.)

- The investigation revealed that Defendant "lied to potential clients who were interested in laundering drug proceeds by falsely claiming to have DEA permission to move such funds.   Defendant also lied to investigators from the DEA, HSI, and the U.S. Attorney's Office in Boston, Massachusetts."   (Detention Order at 2.)

- Defendant has extensive foreign ties, is not a United States citizen, is a citizen of Venezuela and Austria, and has "extensive foreign travel history."   (Detention Order at 3.)

- Defendant "maintains business and familial relationships in Venezuela and other foreign jurisdictions that are known not to cooperate with the U.S. government with respect to extradition."   (Detention Order at 3.)

- Defendant maintains access to millions of dollars overseas.   (Detention Order at 3.)

The Magistrate Judge Found that Defendant's History and Characteristics Weight in Favor of Detention.

In concluding that Defendant's history and characteristics also support detention

(Detention Order at 3.), Judge Torres noted the following facts, among others:

- Defendant was born in Venezuela, is a citizen of Venezuela and Austria, and, at the time of his arrest, possessed valid Venezuelan and Austrian passports.   (Detention Order at 3.)

- Defendant has an extensive international travel history, including travel to and from Venezuela, Panama, Europe, and Asia.   (Detention Order at 3.)

- Defendant has siblings that reside in Panama and Venezuela.   Defendant

previously resided in Venezuela and now regularly resides in Panama.   Defendant

also maintains a residence in South Florida.   (Detention Order at 3-4.)

- Defendant has "extensive financial means."   In particular, "Defendant reports an

  income of $30,000 a month in addition to checking and savings accounts with

  balances totaling $65,000."   Defendant owns luxury automobiles and reported to

  Pretrial Services that his Panama residence is owned in full.   (Detention Order at

  4.)

Judge Torres concluded that "based on a preponderance of the evidence – in particular the

grand jury's probable cause finding that Defendant committed the offenses with which he is

charged in this case, the Defendant's significant foreign ties, the sheer amount of money involved

in this case, the and the severity of the allegations against Defendant – that Defendant would pose

a serious risk of flight if released."   (Detention Order at 4.)

## ANALYSIS

*Lustgarten is Not Entitled to Reopen the Detention Hearing.*

Although Lustgarten styles his Motion as a motion for reconsideration, he also requests an

evidentiary hearing to allow him the opportunity to present facts and circumstances sufficient for

this Court to fashion a release order for bail with terms and conditions to assure the appearance of

the Defendant at all further court proceedings.   (Motion at 2.)   Defendant's motion is, in essence,

a request for a re-opening of the detention hearing.

A detention hearing may be reopened before trial only "after a finding by a judicial officer"

that two conditions have been met: (1) "information exists that was not known to the movant at the

time of the hearing"; and (2) the newly discovered information "has a material bearing on the issue

whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2).   The defendant bears the burden of demonstrating that the purported new information meets these criteria. See, e.g., United States v. McCullough, 2011 U.S. Dist. Lexis 56179, at *3-4 (E.D.N.C. May 24, 2011). Courts interpret the requirements of section 3142(f)(2) strictly.   See generally United States v. Dillon, 938 F.2d 1412, 1415 (1st Cir. 1991) (affirming district court's decision not to re-open detention hearing based on submission of affidavits from witnesses that could have been introduced at the original hearing); United States v. Hare, 873 F.2d 796, 799 (5th Cir. 1989) (affirming district court's decision not to re-open detention hearing because the proffered testimony of defendant's family members and friend was previously available to defendant). Accordingly, a defendant must show "truly changed circumstances, something unexpected, or a significant event" to justify reopening a detention hearing.   United States v. Rodriguez-Adorno, 606 F. Supp. 2d 202, 239 (D.P.R. 2009).   The rationale for such strict interpretations is clear: to avoid serial, piecemeal hearings predicated upon facts that could have been presented at the outset. See United States v. Bowens, 2007 U.S. Dist. Lexis 55749, at *3-4 (D. Ariz. July 31, 2007). Thus, courts have rejected requests to re-open detention hearings in a variety of relevant contexts. See, e.g., United States v. Leclere, 2010 U.S. Dist. Lexis 23678, at *2 (D.N.H. March 15, 2010) (fact that defendant was "not in a position to present mother as possible third-party custodian at prior hearing did not justify re-opening the hearing); McCullough, 2011 U.S. Dist. Lexis 56179, at *3-4 (denying motion to re-open detention hearing where defense counsel failed to establish that defendant was unaware of the availability of a third-party custodian and finding defense counsel's lack of knowledge irrelevant); Rodriguez-Adorno, 606 F. Supp. at 239 ("Congress intended new

information to signify something other than a defendant's own evaluation of the strength of the case against him").

Defendant fails to identify any new basis for re-opening the detention hearing.   In his motion, Defendant asserts that his Venezuelan/Austrian citizenship should not be held against him, that he entered the United States legally, and that any suggestion by the government regarding the true nature of his "purchase order financing business" and the strength of the government's case should be disregarded.   Defendant also asserts that – as a practical matter – it would be more convenient for his Miami-based attorney to meet with him in Florida, that he has "access" to a condominium in Miami where he could reside during the pendency of this criminal case, and that several family members are willing to act as co-sureties.   (Motion at 8-10.)   Defendant's nonspecific assertions that the government's proffered facts and testimony of record should be disregarded certainly do not constitute "new" information that warrants the re-opening of the detention hearing.

In all events, if the Court is inclined to grant Defendant's request for a second evidentiary hearing, the United States requests the opportunity to present evidence relating to two recent attempts by Defendant following his arrest on the First Superseding Indictment to withdraw substantial funds controlled by him that are on deposit at two financial institutions, one foreign and one domestic.   In particular, the government has learned that, following Lustgarten's arrest, an associate of Lustgarten and Lustgarten's wife separately attempted to withdraw several hundred thousand dollars on behalf of Lustgarten from accounts controlled by Lustgarten.   In one instance, based on a prior request of the United States, the account had already been frozen; in the other instance, the United States previously was unaware of the existence of the account, for which

Lustgarten was the sole authorized signatory.   These facts suggest that (1) Defendant likely maintains control over numerous accounts that continue to be unknown to the government and (2) Defendant attempted to access substantial funds controlled by him – potentially with an eye toward flight – by initiating withdrawals from these accounts.   Thus, in the event that the Court is inclined to consider any request for release on conditions, the government seeks to introduce evidence relating to these activities that were directed by Defendant.

> *The Magistrate Judge's Finding That No Conditions Exist to Reasonably Assure Lustgarten's Appearance at Trial was Correct.*

With respect to the evidence presented to the Magistrate Judge in Florida, the Court's conclusion that detention was necessary is correct.   Where, as here, following an evidentiary hearing, "no condition or combination of conditions will reasonably assure the appearance of the person as required," a judicial officer may detain a defendant pending trial.   18 U.S.C. § 3142(e)(1).[1]   The government bears the burden of establishing that the defendant poses a flight risk, by a preponderance of the evidence.   See, e.g., United States v. Rose, No. 11-CR-10062

---

[1]   **Error! Main Document Only.**The Supreme Court has indicated that the government has a substantial interest in ensuring that an accused person will be present at trial, and that, in appropriate cases, the detention of defendants is a "legitimate means of furthering that interest." Bell v. Wolfish, 441 U.S. 520, 534 (1979) (citations omitted); see United States v. Salerno, 481 U.S. 739, 749 (1987) ("respondents concede and the Court of Appeals noted that an arrestee may be incarcerated until trial if he presents a risk of flight . . . .") (citing Bell, 441 U.S. at 534).   The First Circuit similarly has noted that "the right of an accused person to bail, while critically important, is not absolute.   Where risk of flight is unusually great, a court may deny bail and keep a defendant in custody in order to insure that the trial will take place."   United States v. Acevedo-Ramos, 755 F.2d 203, 206 (1st Cir. 1985) (citations omitted).   In appropriate cases, the First Circuit has repeatedly affirmed the pretrial detention of defendants on risk-of-flight grounds. See, e.g., United States v. Cruz-Reyes, 229 F.3d 1134, 2000 WL 1160441, at *1 (1st Cir. July 5, 2000) (*per curiam*) (unpublished op.); United States v. Sullivan, 7 F.3d 219, 1993 WL 367434, at *2 (1st Cir. Sept. 22, 1993) (*per curiam*) (unpublished op.); United States v. Dillon, 938 F.2d 1412, 1417 (1st Cir. 1991).

(NMG), 2012 WL 2500497, at *1 (D. Mass. June 26, 2012) (Gorton, J.).   In evaluating the risk of

flight, the Court must consider, *inter alia*, the nature and circumstances of the offense charged, the

weight of the evidence against the defendant, and the history and characteristics of the defendant.

See 18 U.S.C. § 3142(g).

<u>Lustgarten Has the Incentive and Means to Flee.</u>

Lustgarten has ample incentive to flee.   He is faced with serious charges with a statutory

maximum penalty of twenty years and a contemplated advisory Guidelines range that far exceeds

the statutory maximum.   As the Magistrate Court found after listening to a description of the

government's evidence of the underlying charges, the case against Lustgarten is strong.

As a Venezuelan citizen, Lustgarten's incentive to flee to Venezuela is significantly

heightened, and Judge Torres' concerns regarding the potential challenges presented by

extradition from Venezuela are very real.   Simply stated, if Defendant were to flee to Venezuela --

where he maintains a residence, has substantial family ties, and holds assets – he will live with

impunity.   In particular, on May 20, 2015, the undersigned Assistant U.S. Attorney contacted the

Office of International Affairs and confirmed that the Constitution of the Bolivarian Republic of

Venezuela prohibits extradition of a Venezuelan national by the Venezuelan authorities to a

foreign country.   Article 69 of the Venezuelan Constitution states:

> **Artículo 69.** °
>
> La República Bolivariana de Venezuela reconoce y gara asilo y
> refugio.
> *The Bolivarian Republic of Venezuela recognizes and guarantees*
> *asylum and refuge.*
>
> Se prohíbe la extradición de venezolanos y venezolanas.
> *Extradition of Venezuelans is prohibited.*

The bottom line is that – contrary to defense counsel's assertion during the detention hearing that the Venezuelan authorities would extradite Lustgarten "in a heartbeat" (Detention Transcript at 22.) – the Venezuelan Constitution is a bar to the Venezuelan authorities acting on any extradition requests by the United States.

Furthermore, Lustgarten has the financial means to flee.   As found by a federal grand jury sitting in the District of Massachusetts, there is probable cause to believe that Lustgarten used bank accounts controlled by him to receive millions of U.S. dollars that were the proceeds of drug trafficking in the United States.   (Indictment ¶ 10.)   In particular, the First Superseding Indictment alleges, *inter alia*:

> LUSTGARTEN purchased drug money in U.S. dollars on the black, or parallel, market and sold the U.S. dollars to legitimate companies in Venezuela in exchange for Venezuelan bolivars. LUSTGARTEN received drug proceeds from Mexico and Colombia including millions of U.S. dollars in drug proceeds that others known and unknown to the grand jury caused to be transferred to LUSTGARTEN's Rosemont accounts in Florida from bank accounts associated with two companies in Colombia . . . .

>                                   . . . .

> Following the seizure of the Rosemont Accounts and LUSTGARTEN's accounts . . . on or about March 25, 2009, LUSTGARTEN opened accounts in Hong Kong and Singapore and used those accounts to receive millions of U.S. dollars that were the proceeds of drug trafficking in the United States.   LUSTGARTEN concealed the nature, source, and ownership of this drug money by falsely claiming that the money was a repayment of a loan from his purchase order financing business.

His substantial international ties, both business and personal, are fairly considered in any assessment of his risk of flight.   See United States v. Mardakhayeu, No. 10-CR-10196, 2010 WL

3168631, at *1 (D. Mass. Aug. 9, 2010) (O'Toole, J.) (defendant's business and financial

connections in Belarus contributed to court's decision to affirm pre-trial detention on risk-of-flight

grounds).

In summary, in light of the strength of the government's evidence, the potential for a very

long sentence of incarceration, Defendant's substantial (and, to some extent, unknown) financial

resources, Defendant's extensive foreign ties, and the government's inability to extradite

Defendant from Venezuela, the Court's order of detention appropriately recognizes that there is no

combination of conditions that will reasonably assure his appearance.   Moreover, Defendant has

been charged with obstruction of an official proceeding, based on his materially false statements to

federal agents, which suggests that he would fail to obey any order of release on conditions.

(Detention Transcript at 9.)

## CONCLUSION

For all the foregoing reasons, Lustgarten's motion for reconsideration should be denied

without a hearing.

Respectfully submitted,

CARMEN M. ORTIZ
UNITED STATES ATTORNEY


By:   /s/ *Linda M. Ricci*
        Katherine Ferguson
        Linda M. Ricci
        Assistant U.S. Attorneys
        One Courthouse Way
        Boston, Massachusetts
        (617) 748-3395

Dated:   May 20, 2015

### CERTIFICATE OF SERVICE

The government hereby certifies that the foregoing was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants.

*/s/ Linda M. Ricci*
Linda M. Ricci
Assistant U.S. Attorney

Dated:   May 20, 2015